UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| J. Doe, *as personal representative*, | ) | C/A No. 8:23-cv-6873-RMG-WSB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Augusta University, Select Specialty Hospital - | ) | |
| Augusta, Inc., Select Medical Holdings Corp., | ) | |
| Greenwood Regional Rehabilitation Hospital, | ) | |
| Erika Simmerman Mabes, D.O., John Doe #1 | ) | |
| through John Roe #X, Medical College of Georgia, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the Court on Plaintiff's Motion to Restore pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). ECF No. 12. Plaintiff is proceeding *pro se* in this civil action against the above-named Defendants. Pursuant to 28 U.S.C. § 636(b), and Local Civil Rule 73.02(B) (D.S.C.), the undersigned United States Magistrate Judge is authorized to review all pretrial matters in cases involving *pro se* litigants and submit findings and recommendations to the district court. For the reasons below, Plaintiff's Motion should be denied.[1]

---

[1] Plaintiff has also filed numerous other Motions including a "Notice of Motions, Motion to Recuse, and Motion to Hold All Time Limits in Abeyance Pending Resolution" filed on January 31, 2025 (ECF No. 7); a "Notice of Motions, Amended Motion to Recuse, and Motion to Hold All Time Limits in Abeyance Pending Resolution" filed on February 10, 2025 (ECF No. 13); a "Notice of Motions, Motion for Hearing, Motion to Hold All Time Limits in Abeyance Pending Resolution, Motion for de novo Determination by Article III Judicial Officer without R&R . . . , and Motion to Recuse" filed on April 9, 2025 (ECF No. 21); a Motion pursuant to Rule 59(e) of the Federal Rules of Civil Procedure filed on June 13, 2025 (ECF No. 46); a "Motion to Recuse Addressed to the Magistrate, Motion for Abeyance Pending Resolution, and if denied, Preliminary Response to ECF No. 38" filed on June 16, 2025 (ECF No. 47); and a "Notice of Motion, Motion for Hearing, Motion Addressed to Magistrate Brown to Recuse, and Motion to Hold All Time Limits in Abeyance Pending Resolution" filed on July 10, 2025 (ECF No. 50). The Court has considered

## BACKGROUND

**Procedural History**

Plaintiff commenced this action on December 27, 2023, by filing a Complaint.[2]  ECF No. 1. Plaintiff purports to bring this action using the pseudonym "J. Doe" on behalf of a Decedent's estate,[3] although Plaintiff signed the Complaint as "C. Holmes."[4]  *Id*. at 1, 9.

On February 8, 2024, Plaintiff filed a Notice of Voluntary Dismissal.  ECF No. 6. Plaintiff's Notice explained as follows, quoted verbatim:

---

all of Plaintiff's filings, which include hundreds of pages of briefing and supporting documents. Those Motions not addressed herein or reserved for consideration of the District Judge are recommended to be found moot as the case is closed and should not be reopened in accordance with the analysis contained herein.

[2] The action was initially assigned to the Honorable Bruce H. Hendricks, United States District Judge, and referred to the Honorable Molly H. Cherry, United States Magistrate Judge, for pretrial handling.

[3] Plaintiff identifies the decedent as Naomi Hyler Collie.  ECF No. 1 at 5.  Plaintiff apparently was the daughter of Ms. Collie.  *See* ECF No. 32 at 6, n.2.

[4] Plaintiff commenced this action using a pseudonym without first obtaining permission from this Court under Federal Rule of Civil Procedure 10(a).  "While the Fourth Circuit Court of Appeals has not ruled on this issue, some courts have held that, absent permission to proceed anonymously, if a complaint fails to comply with Rule 10(a) and does not divulge the plaintiff's identity, its filing is ineffective to commence an action and the court lacks jurisdiction over the unnamed parties."  *Richard S. v. Sebelius*, C/A No. 3:12-cv-007-TMC, 2012 WL 1909344, at *1 (D.S.C. May 25, 2012) (denying "Plaintiffs' belated request to proceed anonymously") (citations omitted).  "The court does not condone the filing of an action anonymously without permission . . . [and, w]ithout identification of Plaintiffs or permission from the court to proceed anonymously or under a pseudonym, the court may lack jurisdiction and, furthermore, the burden should not fall on Defendants to request identification of Plaintiffs."  *Id.*  Despite Plaintiff's initial failure to comply with Rule 10(a), the Complaint identifies Plaintiff as "C. Holmes."  As such, the Court need not address Plaintiff's failure at the outset of this case to seek permission to proceed under a pseudonym, although the Court reaffirms that Plaintiff's Complaint should have been accompanied by an appropriate request under Rule 10(a) to proceed using a pseudonym to the extent Plaintiff wished to keep her identity hidden.  *See Doe v. Weston & Sampson Eng'rs, Inc.*, 743 F. Supp. 3d 751, 758 (D.S.C. 2024).

> Pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure, the plaintiff J. Doe and their counsel(s), hereby give notice that the above-captioned action is voluntarily dismissed, without prejudice against the defendants Augusta University, f/k/a Medical College of Georgia (MCG), Select Specialty Hospital – Augusta, Inc., Select Medical Holdings Corp., Greenwood Regional Rehabilitation Hospital, Erika Simmerman Mabes, D.O. [("Mabes")], and John Roe # 1 through John Roe # X.

*Id*. at 2. The action was closed by the Clerk of Court upon the filing of Plaintiff's Notice. Because Plaintiff voluntarily dismissed the action before the Court could conduct an initial screening of the action, service of process was never authorized on the named Defendants.

On January 31, 2025, Plaintiff filed a Motion for Recusal, Motion to Hold all Time Limits in Abeyance Pending Resolution, and Motion for Restoration. ECF No. 7. On February 5, 2025, the case was reassigned to the Honorable Richard M. Gergel, United States District Judge, and, on April 2, 2025, the case was referred to the undersigned United States Magistrate Judge for pretrial handling. ECF Nos. 9; 15. On February 6, 2025, Plaintiff filed a Motion to Restore Pursuant to Rule 41(a)(1)(A)(i), which is the operative Motion under consideration. ECF No. 12.

On April 2, 2025, upon review of the Motion to Restore (ECF No. 12), the Court entered the following Text Order:

> On February 6, 2025, Plaintiff filed a Motion to Restore Pursuant to Rule 41(a). ECF No. 12. Although Federal Rule of Civil Procedure 41(a) permits the voluntary dismissal of a case without prejudice, there is no mechanism under Rule 41 to restore a dismissed case to the docket. *See* Fed. R. Civ. P. 41. However, a party can move, pursuant to Rule 60(b), for relief from a final proceeding. *See Waetzig v. Halliburton Energy Servs., Inc.*, 145 S. Ct. 690, 700 (2025) (holding that a Rule 41(a) voluntary dismissal without prejudice counts as a final proceeding under Rule 60(b) and that when the requirements of Rule 60(b) are satisfied, a district court may relieve a party from such a dismissal and reopen the case). The Court hereby gives Plaintiff notice that it intends to construe Plaintiff's Motion to Restore Pursuant to Rule 41(a) as a Motion for

> Relief from a Final Proceeding pursuant to Rule 60(b). The Court further grants Plaintiff fourteen (14) days from the date of this Order to submit supplemental briefing presenting arguments and information related to the standard for relief under Federal Rule of Civil Procedure 60(b).

ECF No. 18. Plaintiff's response to the Text Order was due by April 16, 2025, but Plaintiff did not file a responsive brief. Instead, on April 11, 2025, Plaintiff improperly filed an Amended Complaint and a proposed Summons.[5] ECF Nos. 22; 23.

On April 24, 2025, the undersigned issued a Report and Recommendation (the "R&R"), recommending that the Court deny Plaintiff's Motion to Restore the case. ECF No. 25. On May 27, 2025, Judge Gergel issued an Order declining to adopt the R&R and recommitting the case to the undersigned with the following instructions, among others:

> [R]ecognizing that Plaintiff was acting *pro se*, the Court finds that the interests of justice are best served by remanding this matter to the Magistrate Judge to allow Plaintiff an additional opportunity to address with specificity and documentation any alleged "wrongdoing" by Defendants in withholding medical records. Unless Plaintiff can demonstrate a sufficient basis for a finding of "exceptional circumstances" for relief from her voluntary dismissal, she cannot satisfy the threshold requirements for relief under Rule 60. The information thus far presented by Plaintiff is not sufficient to demonstrate "exceptional circumstances" for Rule 60 relief.

---

[5] Plaintiff did not seek or obtain leave of Court to file an amended complaint. A "district court may not grant [a] post-judgment motion [to amend] unless the judgment is vacated pursuant to Rule 59(e) or Fed. R. Civ. P. 60(b)." *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006) (citing *Cooper v. Shumway,* 780 F.2d 27, 29 (10th Cir. 1985) ("[O]nce judgment is entered the filing of an amended complaint is not permissible until judgment is set aside or vacated pursuant to Fed. R. Civ. P. 59(e) or 60(b).")). "[T]he law in our circuit remains that a motion to amend a complaint filed after a final judgment has been entered cannot be considered until the judgment has been vacated." *Daulatzai v. Md.*, 97 F.4th 166, 178 (4th Cir. 2024). The Supreme Court of the United States recently reiterated that "a party seeking to reopen his case and replead must first satisfy Rule 60(b) on its own terms and obtain Rule 60(b) relief before Rule 15(a)'s liberal amendment standard can apply." *BLOM Bank SAL v. Honickman*, 145 S. Ct. 1612, 1619 (2025).

> On remand, the Magistrate Judge should further address Plaintiff's requirement of showing a meritorious claim as a threshold requirement under Rule 60.

*Id*. at 5.  On May 28, 2025, the undersigned entered the following Text Order:

> On February 6, 2025, Plaintiff filed a Motion to Restore, which is construed as a Motion for Relief from a Final Proceeding pursuant to Rule 60(b) of the Federal Rules of Civil Procedure.  ECF No. 12.  By Order dated May 27, 2025, the Honorable Richard M. Gergel recommitted the matter to the undersigned to further consider whether Plaintiff can satisfy the requirements for relief under Rule 60(b), including the threshold requirement of showing a meritorious claim.  ECF No. 32.  Therefore, Plaintiff is given twenty (20) days from the date of this Order to submit supplemental briefing and documents to present arguments and information related to the standard for relief under Rule 60(b) and to address the issues identified in Judge Gergel's May 27 Order (ECF No. 32).

ECF No. 38.

Rather than filing a response to the Court's Text Order, Plaintiff filed a Notice of Appeal to the United States Court of Appeals for the Fourth Circuit on June 6, 2025.  ECF No. 41.  Plaintiff purported to appeal "the lower court orders filed May 27, 2025, May 28, 2025, and all intermediate orders."  *Id*.[6]

On June 13, 2025, after filing the notice of appeal, Plaintiff filed a Motion pursuant to Rule 59(e) of the Federal Rules of Civil Procedure "regarding the orders filed May 27, 2025, May 28, 2025, and all intermediate orders."  ECF No. 46.  Plaintiff's lengthy Motion presents numerous arguments regarding her underlying claims as well as this Court's various rulings in this case.  *Id*.

---

[6] The filing of a notice of appeal is an event of jurisdictional significance which confers jurisdiction on the court of appeals and divests the district court of jurisdiction over the aspects of the case involved in the appeal.  *FTC v. Yu Lin*, 66 F.4th 164, 166 (4th Cir. 2023) (A "timely filed notice of appeal transfers jurisdiction of a case to the court of appeals and strips a district court of jurisdiction to rule on any matters involved in the appeal.").

On June 23, 2025, Plaintiff filed an exhibit to her Rule 59(e) Motion in the form of an Affidavit. ECF No. 48.

On June 16, 2025, Plaintiff filed a Motion captioned as a "Motion to Recuse Addressed to the Magistrate, Motion for Abeyance Pending Resolution, and if denied, Preliminary Response to ECF 38." ECF No. 47.

On July 7, 2025, Plaintiff filed a Motion in the appeal asking that the Fourth Circuit hold the appeal in abeyance pending the resolution of a Rule 59(e) motion filed in this Court. *See Doe v. Augusta University*, No. 25-1650 (4th Cir. July 7, 2025). The Fourth Circuit issued an Order dated July 8, 2025, providing as follows:

> The court grants the motion for abeyance, which is construed as a motion to suspend proceedings, and suspends the informal briefing order and fee notice deadlines pending resolution of the Rule 59 motion by the district court.

*Id.*[7]

On July 10, 2025, Plaintiff filed a "Motion for Hearing, Motion Addressed to Magistrate Brown to Recuse and Motion to Hold all Time Limits in Abeyance Pending Resolution." ECF No. 50.

The Court has reviewed each of Plaintiff's filings, and this matter is ripe for disposition on Plaintiff's request to reopen the case.

---

[7] The July 7, 2025, motion in the appeal was not provided to or filed with the District Court. The July 8, 2025, Order from the court of appeals was not received by or filed in the District Court until September 11, 2025. ECF 51.

**Factual Allegations**

Plaintiff makes the following allegations in the Complaint. ECF No. 1. Defendants, as health care entities, facilities, and providers, had a duty to comply with the Affordable Care Act ("ACA"). *Id*. at 3. On November 7, 2021, the Decedent fell ill and was transported by ambulance to August University, f/k/a Medical College of Georgia ("MCG"). *Id*. The Decedent underwent emergency laparoscopic surgery for liver laceration with uncontrolled bleeding, which required multiple liters of blood transfusion after abdominal hemorrhage and other considerations. *Id*. According to Plaintiff, the standards of care require that physicians appreciate that liver laceration increases the risk of post-operative infection after blood transfusion for abdominal hemorrhage and that any signs or symptoms of infection must be immediately observed and aggressively treated in a timely manner, requiring close monitoring. *Id*. at 4.

Plaintiff alleges the applicable standards of care were breached in failing to respond to information; in failing to sufficiently monitor, evaluate, and treat an abdominal abscess post abdominal hemorrhage and infection; and in failing to adequately monitor, evaluate, and aggressively treat an abscess, infection, or other complication. *Id*. The failure to timely and aggressively treat either caused or aggravated the deterioration of the Decedent's condition, causing an untimely and wrongful death on December 26, 2021. *Id*. Plaintiff contends the Decedent would not have suffered an untimely and wrongful death but for the breach of the applicable standards of care. *Id*. at 5. Defendants "were negligent, careless, wanton, willful, reckless, and grossly negligent in breaching the applicable standards of care thereby directly and proximately causing or contributing to Decedent's untimely, wrongful death with actual, special, exemplary and/or other damages." *Id*.

Based on these allegations, Plaintiff asserts four causes of action: (1) a survival action under the South Carolina Survival Action Statutes; (2) a claim for wrongful death under the South Carolina Wrongful Death Act; (3) a claim under the ACA; and (4) equitable claims including for unjust enrichment. *Id*. at 5–9. For her relief, Plaintiff seeks an unspecified amount of money damages. *Id*. at 9.

## STANDARD OF REVIEW

Because Plaintiff is a *pro se* litigant, her pleadings and filings are accorded liberal construction and held to a less stringent standard than formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Even under this less stringent standard, the *pro se* pleadings are subject to review and, if appropriate, summary dismissal. The mandated liberal construction afforded to *pro se* pleadings means that if the Court can reasonably read the pleadings to state a valid claim on which Plaintiff could prevail, it should do so, but the Court may not rewrite *pro se* pleadings to include claims or arguments that were never presented, *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). Nor should the Court construct Plaintiff's legal arguments for her, *Small v. Endicott*, 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the Court, *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). The requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a claim cognizable in a federal district court. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

This Court also possesses the inherent authority to review *pro se* pleadings to ensure that subject matter jurisdiction exists and that a case is not frivolous, even if the pleadings are not subject to the prescreening provisions of 28 U.S.C. § 1915. *See Mallard v. U. S. Dist. Court*, 490

U.S. 296, 307–08 (1989) ("Section 1915(d) . . . authorizes courts to dismiss a 'frivolous or malicious' action, but there is little doubt they would have power to do so even in the absence of this statutory provision."); *Ross v. Baron*, 493 F. App'x 405, 406 (4th Cir. 2012) (unpublished) ("[F]rivolous complaints are subject to dismissal pursuant to the inherent authority of the court, even when the filing fee has been paid . . . [and] because a court lacks subject matter jurisdiction over an obviously frivolous complaint, dismissal prior to service of process is permitted.") (citations omitted); *see also Fitzgerald v. First E. Seventh Street Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) ("[D]istrict courts may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee[.]"); *Ricketts v. Midwest Nat'l Bank*, 874 F.2d 1177, 1181 (7th Cir. 1989) ("[A] district court's obligation to review its own jurisdiction is a matter that must be raised *sua sponte*, and it exists independent of the 'defenses' a party might either make or waive under the Federal Rules."); *Franklin v. State of Or., State Welfare Div.*, 662 F.2d 1337, 1342 (9th Cir. 1981) (providing that a judge may dismiss an action *sua sponte* for lack of subject matter jurisdiction without issuing a summons or following other procedural requirements).

## DISCUSSION

On February 8, 2024, Plaintiff filed a Notice of Voluntary Dismissal pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure. ECF No. 6. Dismissal under Rule 41(a) terminates the case. *Waetzig v. Halliburton Energy Servs., Inc.*, 145 S. Ct. 690, 694 (2025). This case is closed and, thus, the issue which must be addressed first is whether Plaintiff has satisfied the applicable criteria to reopen the case. However, Plaintiff argues that certain other motions should be addressed first. For the sake of caution and to afford Plaintiff a full opportunity to be

heard, the Court will also provide an analysis of why certain of Plaintiff's other Motions are not an impediment to the analysis provided herein.

**Motions to Recuse**

Plaintiff has filed multiple Motions for recusal addressed to the undersigned, to Judge Gergel, and/or to both Judges. *See, e.g.*, ECF Nos. 7; 13; 21; 47; 50. At lease two of Plaintiff's pending Motions request that the undersigned recuse himself from this case. ECF Nos. 47; 50. Judge Gergel previously denied Plaintiff's prior request for recusal. ECF No. 31. For the same reasons explained in that Order, the undersigned concludes that Plaintiff's pending Motions for recusal are without merit and should be denied. [8]

Two federal statutes address the recusal of a federal judge. First, 28 U.S.C. § 144 prohibits a federal judge from presiding over a case where the judge "has a personal bias or prejudice" against a party. Second, 28 U.S.C. § 455 provides for the disqualification of a judge "in which his impartiality might reasonably be questioned' or where a judge has a "personal bias or prejudice concerning a party." Any disqualification of a federal judge based on appearance of impartiality must be considered from the perspective of a reasonable person fully informed of all the "surrounding facts and circumstances." *Microsoft v. United States*, 530 U.S. 1301, 1302 (2000).

---

[8] Plaintiff is a "frequent filer" of *pro se* actions in this Court, having filed actions at case numbers 2:16-cv-3969-BHH-BM; 2:17-cv-2491-BHH-BM; 2:17-cv-2949-BHH-BM; 2:20-cv-0004-BHH-MHC; 2:20-cv-0234-BHH-MHC; 2:20-cv-1748-BHH-MHC; 2:20-cv-3376-BHH-MHC; 2:22-cv-3758-BHH-MHC; and 8:23-cv-6873-RMG-WSB. Plaintiff has filed numerous motions in her other cases that are similar to those filed in the present action, such as her motions to recuse. *See, e.g., Holmes v. Milgram*, C/A No. 2:22-cv-3758-BHH, 2024 WL 4529279, at *1 (D.S.C. Feb. 9, 2024), *aff'd*, No. 24-1175, 2025 WL 800439 (4th Cir. Mar. 13, 2025) (evaluating motion to recuse filed by Plaintiff in that case). Plaintiff appears to file such motions as a tactic to challenge the authority of the Court when dissatisfied with the Court's rulings.

Further, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States,* 510 U.S. 540, 555 (1994).

Plaintiff vaguely alleges bias, favoritism, impartiality, and ex parte contacts, but she offers nothing in the way of specifics in the record other than her disagreement with the undersigned's rulings in this case. There is no factual basis in the record before the Court in which a reasonable person fully informed of all surrounding facts and circumstances could conclude that the undersigned has any personal bias against Plaintiff or that there is any other basis for recusal. Plaintiff's disagreement with the rulings made by the Court in this case is not a valid basis for judicial disqualification. *See Liteky*, 510 U.S. at 554–55 (explaining the basis of the disqualification must come from an "extrajudicial source"); *United States v. Gordon*, 61 F. 3d 263, 268 (1995) ("[L]itigants may not make the trial judge into an issue because they dislike the court's approach or because they disagree with the ultimate outcome of their case."). Plaintiff has presented no information of any extrajudicial source or information which could support disqualification. Based on the foregoing, Plaintiff's requests for recusal are without merit and should be denied.

**Motion for Hearing**

Plaintiff has also filed a Motion requesting a hearing. ECF No. 50 at 3. Whether to schedule a hearing is within the court's sole discretion. *Josey v. Wal-Mart*, C/A No. 0:11-cv-2993-CMC-SVH, 2012 WL 527532, at *1 (D.S.C. Feb. 16, 2012). Upon review of the entire record in this case and the many pending Motions, the Court finds that a hearing is unnecessary. Plaintiff has filed numerous Motions in this action that are supported by briefs, affidavits, and other materials. The Court has afforded Plaintiff numerous opportunities to address the Court through

Motions and briefs to support the arguments and claims presented in this case. A hearing is unnecessary and would not aid the Court in deciding the pending Motions.

**Rule 59(e) Motion**

Plaintiff's Rule 59(e) Motion seeks reconsideration of Judge Gergel's Order dated May 27, 2025 (ECF No. 32), and the undersigned's Text Order dated May 28, 2025 (ECF No. 38). ECF No. 46. Addressed herein is Plaintiff's Rule 59(e) Motion addressed to the Text Order dated May 28, 2025 (ECF No. 38).[9]

Motions under Rule 59 are not to be made lightly. *See Pac. Ins. Co. v. American Nat'l Fire Ins. Co.,* 148 F.3d 396, 403 (4th Cir. 1998) ("In general, reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly."). Rule 59(e) allows a court to grant a motion for reconsideration in three instances: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or to prevent manifest injustice." *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993). Plaintiff does not allege a change in controlling law. Plaintiff also has not identified any new evidence that was not considered as it pertains to the challenged Orders. Finally, Plaintiff has not demonstrated that a clear error of law has occurred or that reversal is necessary to prevent manifest injustice. As to the May 28, 2025, Text Order, Plaintiff has not identified any basis for the Court to reconsider its ruling. Accordingly, Plaintiff's Motion should be denied as it pertains to the May 28, 2025, Text Order.

---

[9] The evaluation and determination of the portion of the Rule 59(e) motion directed to Judge Gergel's Order of May 27, 2025 (ECF No. 32) is reserved to Judge Gergel.

**Motion to Restore**

As noted, Plaintiff filed a Motion on February 6, 2025, seeking to restore and reopen this action, which she had voluntarily dismissed pursuant to Rule 41(a)(1)(A)(i) on February 8, 2024.[10] ECF No. 12. There is no mechanism under Rule 41 to restore a dismissed case to the docket. *See* Fed. R. Civ. P. 41. Indeed, until recently, it was the settled law in the Fourth Circuit that "district courts lack jurisdiction to grant a motion to reopen where a plaintiff has previously voluntarily dismissed the action pursuant to Rule 41(a)(1)(A)(i)." *Emory v. Lowe's Home Centers, LLC*, C/A No. 7:20-cv-629-BHH-KFM, 2021 WL 5361834, at *1 (D.S.C. Jan. 21, 2021) (collecting cases), *R&R adopted by* 2021 WL 4859942 (D.S.C. Oct. 19, 2021); *see In re Matthews*, 395 F.3d 477, 480 (4th Cir. 2005) ("[A]fter an action is voluntarily dismissed, the court lacks authority to conduct further proceedings on the merits."); *Warren v. City of Greensboro*, C/A No. 1:23-cv-69, 2023 WL 8115038, at *1 (M.D.N.C. Oct. 23, 2023) (discussing cases), *R&R adopted by* 2023 WL 8113829 (M.D.N.C. Nov. 22, 2023).

However, this year, the Supreme Court explained that a party can move, pursuant to Rule 60(b), for relief from a dismissal pursuant to Rule 41(a), which constitutes a final proceeding. *See Waetzig v. Halliburton Energy Servs., Inc.*, 145 S. Ct. 690, 700 (2025) (holding that a Rule 41(a) voluntary dismissal without prejudice counts as a final proceeding under Rule 60(b) and that, when

---

[10] Rule 41(a)(1)(A) provides two ways for a plaintiff to voluntarily dismiss an action without a court order. First, as in this case, a plaintiff may file "a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment." Fed. R. Civ. P. 41(a)(1)(A)(i); *see also Bunch v. Switchcars, Inc.*, C/A No. 1:22-cv-00240-MR-WCM, 2023 WL 8008336, at *1 (W.D.N.C. Nov. 16, 2023) ("Under the Federal Rules of Civil Procedure, a plaintiff has an absolute right to dismiss an action without prejudice at any point until the defendant either answers the complaint or moves for summary judgment." (citing Fed. R. Civ. Pro. 41(a)(1))). Second, a plaintiff may file "a stipulation of dismissal signed by all the parties who have appeared." Fed. R. Civ. P. 41(a)(1)(A)(ii).

the requirements of Rule 60(b) are satisfied, a district court may relieve a party from such a dismissal and reopen the case).

Rule 60(b) permits a court "on motion and just terms" to "relieve a party . . . from a final judgment, order, or proceeding." Fed. R. Civ. P. 60(b).  To obtain relief under Rule 60(b), "a party must demonstrate (1) timeliness, (2) a meritorious [claim or] defense, (3) a lack of unfair prejudice to the opposing party, and (4) exceptional circumstances." *Wells Fargo Bank, N.A. v. AMH Roman Two NC, LLC*, 859 F.3d 295, 299 (4th Cir. 2017).  "After a party has crossed this initial threshold, he [or she] then must satisfy one of the six specific sections of Rule 60(b)." *Dowell v. State Farm Fire & Cas. Auto. Ins. Co.*, 993 F.2d 46, 48 (4th Cir. 1993) (citing *Werner v. Carbo*, 731 F.2d 204, 207 (4th Cir. 1984)).  Those six enumerated reasons are:

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).  "The general purpose of the rule . . . is to make an exception to finality." *Waetzig*, 145 S. Ct. at 694, (internal quotation marks omitted).  As the Supreme Court observed, "[t]he Rule attempts to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice should be done."  *Id.* (internal quotation marks and

citation omitted).  As such, motions for relief under Rule 60(b) must be made within a reasonable time—and, when based on reasons such as excusable neglect, can be made "no more than a year after the entry of judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1).  The remedy of reopening a case under Rule 60(b) is "only to be invoked upon a showing of extraordinary circumstances." *Compton v. Alton S.S.Co., Inc.*, 608 F.2d 96, 102 (4th Cir. 1979).

Petitioner has not shown that Rule 60(b) relief is warranted, despite being provided with multiple opportunities to do so.  In the Motion to Restore, Plaintiff does not discuss the requirements of Rule 60(b) but merely states that there is "good cause" to restore the case.  ECF No. 12 at 1.  The only suggestion of a reason to reopen the case is Plaintiff's assertion that "delay in obtaining pertinent medical records caused delay." *Id*.  That assertion, however, without any further explanation, is insufficient to satisfy the threshold requirements or one of the six enumerated reasons in Rule 60(b).

Plaintiff was instructed to file a brief in support of her Motion to address whether she can satisfy the requirements of Rule 60(b).  ECF No. 18.  But Plaintiff initially did not file any such brief in response to that Order, and she failed to demonstrate that she meets the requirements of Rule 60(b).  In the Order dated May 27, 2025, ruling on the undersigned's Report and Recommendation, Judge Gergel discussed the Rule 60(b) requirements and concluded "[t]he information thus far presented by Plaintiff is not sufficient to demonstrate 'exceptional circumstances' for Rule 60 relief."  ECF No. 32 at 5.  Judge Gergel noted that "[u]nless Plaintiff can demonstrate a sufficient factual basis for a finding of 'exceptional circumstances' for relief from her voluntary dismissal, she cannot satisfy the threshold requirements for relief under Rule

60." *Id*. He further instructed the undersigned to "address Plaintiff's requirement of showing a meritorious claim as a threshold requirement under Rule 60." *Id*.

The Court again gave Plaintiff an opportunity to "submit supplemental briefing and documents to present arguments and information related to the standard for relief under Rule 60(b) and to address the issues identified in Judge Gergel's May 27 Order." ECF No. 38. Plaintiff then filed, on June 16, 2025, a document which purports to be a "preliminary response" to the Court's directive to provide information related to the standard for relief under Rule 60(b). ECF No. 47. However, having reviewed that response, along with the entire record before the Court, the undersigned is unable to find that Plaintiff can satisfy the threshold requirements which "obligate a party to demonstrate '(1) timeliness, (2) a meritorious [claim or] defense, (3) a lack of unfair prejudice to the opposing party, and (4) exceptional circumstances'" or discern any reasons to show that one of the six enumerated criteria are satisfied under Rule 60(b). *Nationwide Mut. Fire Ins. Co. v. Wright*, C/A No. 3:22-cv-1521-MGL, 2025 WL 346090, at *4 (D.S.C. Jan. 30, 2025) (quoting *Wells Fargo Bank*, 859 F.3d at 299).

### Plaintiff's Arguments

Plaintiff makes the following arguments ostensibly in support of her Motion to Restore. ECF No. 47.

### Objection to Referral

Plaintiff contends that she was not provided notice of the "purported referral" of the case to a United States Magistrate Judge for pretrial handling, that she does not consent to such a

16

referral, and that there is no statutory authorization for such a referral.[11]  *Id*. at 10.  In the Order

dated May 27, 2025, Judge Gergel addressed this very argument and found it to be without merit.

ECF No. 32 at 2.  Plaintiff merely reiterates arguments previously made and rejected by the Court.

Plaintiff's argument is without merit for the reasons previously explained by Judge Gergel.

Additionally, the argument does not present information related to the standard for relief under

Rule 60(b) or in support of restoration of the closed case.

### *January 31 Notice of Restoration*

Plaintiff asserts that the Court "overlook[ed] or misapprehends the [Plaintiff's] January 31,

2025, Notice of RESTORATION . . ."  ECF No. 47 at 11.  Plaintiff asserts that she does not need

the Court's approval to restore or reopen the case.  Plaintiff argues that she has a right to file a

Notice of Restoration within one year of dismissal pursuant to Rule 40(j) of the South Carolina

Rules of Civil Procedure.[12]  *Id*. at 19; 25 ("It is respectfully submitted, under the facts, the notice

of voluntary restoration within a year pursuant to applicable forum state law does not require a

---

[11] Plaintiff weaves this argument throughout her entire brief.  Indeed, Plaintiff's contention that a Magistrate Judge does not have the authority to consider the Motion to Restore and make a recommendation to the district court appears to form a basis for her belief that the Motion to Restore should be granted.  Her argument is incorrect and has previously been rejected by Judge Gergel.

[12] Plaintiff repeats this argument in multiple places in her brief.  For example, Plaintiff argues as follows:

> Under the facts, the opinion in ECF 32 conflates a non-existent motion to reopen with timely voluntary notice of restoration after the decedent's Rule 41(a)(1)(A)(i), FRCP, voluntary dismissal pursuant to forum state law including Rule 40(j), SCRCP.  The record reflects there is no motion to reopen a court-ordered dismissal herein which has differing requirements . . .

ECF No. 47 at 25.  Plaintiff's argument is without merit and misstates the law.

17

motion to restore."). Plaintiff does not cite any case law that would allow her to unilaterally reopen a case that has been closed and terminated. Judge Gergel previously addressed—and rejected—this argument, noting that "Rule 41(a)(1)(A)(i) does not authorize a party to unilaterally restore a case voluntarily dismissed onto the docket, and a federal court has no jurisdiction to reopen a case once dismissed under that Rule." ECF No. 32 at 3. Judge Gergel further explained that Rule 40(j) of the South Carolina Rules of Civil Procedure does not apply, and the Federal Rules of Civil Procedure contain no similar provision. *Id.*[13]

Plaintiff argues that the federal court can "borrow" state procedural rules. ECF 46 at 12. However, the cases she cites involve the application of a state statute of limitations and tolling provisions regarding the statute of limitations. This is not analogous to the request to apply a rule which is substantively different than the Federal Rules of Civil Procedure. Plaintiff's argument is without merit for the reasons stated herein and previously explained by Judge Gergel.

### *Rule 59(e) Motion to Vacate the Voluntary Dismissal*

Next, Plaintiff argues she is entitled to restore her case under Rule 59(e), citing *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006). ECF No. 47 at 27. The Court understands Plaintiff to be arguing that her Motion to Restore should be construed as one seeking to vacate the Notice of Voluntary Dismissal under Rule 59(e). To the extent Plaintiff is seeking to alter, amend, or vacate the Notice of Voluntary Dismissal on February 8, 2024 (ECF No. 6), and/or is seeking to restore

---

[13] Rule 40 of the Federal Rules of Civil Procedure is substantively different than Rule 40 of the South Carolina Rules of Civil Procedure. Even if the South Carolina Rules of Civil Procedure could apply in federal court, Plaintiff erroneously asserts that by filing a notice of restoration she can unilaterally or automatically restore the case without court action. *Pers. Care, Inc. v. Theos*, 426 S.C. 78, 825 S.E.2d 281, 285 (Ct. App. 2019) ("Notably, the procedure under Rule 40(j) for restoring a case is not automatic; the rule contemplates the filing of a motion and a hearing before the case can be reinstated.").

or reopen this case based on Rule 59(e), her argument is without merit. Rule 59(e) simply does not provide an avenue for Plaintiff to reopen her case.

Plaintiff cannot satisfy the requirements for a Rule 59(e) motion as it pertains to her Notice of Voluntary Dismissal. A Rule 59(e) motion must be filed within 28 days of a judgment. *See* Fed. R. Civ. P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."); *see also Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403, 412 (4th Cir. 2010). Plaintiff's attempt to reopen this case nearly a year after her Notice of Voluntary Dismissal falls far outside the time limitations of Rule 59(e). *Fields v. Express Emp. Advanced Drainage Sys.*, C/A No. 3:18-cv-00104-MOC-DSC, 2018 WL 11712320, at *1 (W.D.N.C. Sept. 14, 2018) (explaining that, because the plaintiff's motion to reopen a case after Rule 41 voluntary dismissal would have been untimely under Rule 59(e), "Rule 60(b) was the only option").

Additionally, Rule 59(e) motions are granted only in very narrow circumstances: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Hill v. Braxton*, 277 F.3d 701, 708 (4th Cir. 2002) (quoting *Collison v. Int'l Chem. Workers Union*, 34 F.3d 233, 236 (4th Cir. 1994)). Plaintiff has not presented arguments or evidence to support any of these enumerated grounds. For example, Plaintiff has not identified evidence that was unavailable to her when she filed the underlying Complaint nor does her Motion stem from an intervening change in the applicable law. Although Plaintiff argues that she was waiting on medical records from Defendants, Plaintiff has not explained why those medical records were necessary to proceed with this action. Plaintiff also has not offered evidentiary support to show that Defendants caused the delay in procuring the medical records or that Plaintiff herself engaged in due diligence to acquire

19

any necessary medical records.  In her one-page Affidavit, Plaintiff asserts she "made multiple timely requests without response for Decedent's medical records," she "had to make arrangements to travel to the hospital in order to obtain the records after unreasonable delay," and "the medical records received were incomplete and we had to follow-up on multiple occasions."  ECF No. 47-1 at 2.  Plaintiff does not provide evidentiary or documentary support for these conclusory assertions.  These assertions do not demonstrate that any necessary evidence was unavailable to Plaintiff such as to impede her ability to proceed with this action.  The Decedent allegedly died in December 2021.  Plaintiff's averments in her Affidavit fail to identify what efforts (including pointing to any dates or specific communications) Plaintiff took from December 2021 until she filed the present action two years later in 2023, or her efforts from the filing of her Notice of Voluntary Dismissal in February 2024 until her Motion to Restore filed in February 2025.  Further, and critically, Plaintiff has not pointed to any evidence that she has uncovered since her Notice of Voluntary Dismissal that would alter the view of the Court to satisfy the requirements of Rule 59(e).

Also, Plaintiff has not shown that a clear error of law has been made or that a failure to grant the Motion would result in manifest injustice to her.  Instead, Plaintiff's Motion merely reasserts the same allegations made in the original Complaint.  Accordingly, to the extent Plaintiff is seeking to restore or reopen her case under Rule 59(e), any such request is without merit and should be denied.  *See Stern v. United States*, C/A No. 1:16-cv-00329-MR, 2017 WL 127465, at *2 (W.D.N.C. Jan. 12, 2017) (discussing Rule 59(e) requirements and finding the plaintiff failed to satisfy "the limited circumstances under which a Rule 59(e) motion may be granted"), *aff'd*, 693 F. App'x 196 (4th Cir. 2017).

20

### *Exceptional Circumstances*

Plaintiff further argues that, although she denies Rule 60(b) is the only path to reopen the case, she has satisfied the threshold requirements. ECF No. 47 at 30. Plaintiff contends she can show exceptional circumstances in that Defendants unreasonably delayed in providing timely requested medical records for the required medical expert affidavit. *Id*. Plaintiff relies on her own Affidavit, which she contends "recounts how the paralegal corresponded via email and by phone directly with the medical records division requesting Decedent's medical records and providing the Decedent's identity, date of admission, date of discharge, and other required information." *Id*. According to Plaintiff, although staff of the medical records division confirmed they were in possession of the requested records, and although Plaintiff provided requested documentation authorizing release of the records and payment of applicable fees, the records were not timely provided. *Id*. Plaintiff asserts that Defendants' failure to provide medical records constitutes exceptional circumstances to support relief under Rule 60(b). *Id*. at 30–31 ("It is respectfully submitted unreasonable delay by defendants without just cause in providing medical records for the required expert opinion affidavit is a ground that justifies relief.").

Plaintiff's Response includes three Affidavits. Plaintiff makes the following averments in the First Affidavit, which was signed by Plaintiff and sworn before a Notary Public on June 16, 2025. ECF No. 47 at 41–42. Plaintiff made multiple, timely requests for the Decedent's medical records from MCG. *Id*. at 41. Plaintiff did not receive a response. *Id*. Plaintiff further states as follows:

> The paralegal corresponded via email and by phone directly with the medical records division requesting decedent's medical records and providing the decedent's identity, date of admission, date of discharge, and other required information. The medical records division confirmed they were in possession of the requested records.

21

> The plaintiff also spoke with staff at the medical records division and provided requested documentation authorizing the release of records and payment for fees. On multiple occasions, we were assured that the records were forthcoming and should be received by a certain date. The promised dates came and went without response. The plaintiff had to make arrangements to travel to the hospital in order to obtain the records after unreasonable delay.

*Id*. Plaintiff filed an Amended Affidavit that repeated these same averments, with the addition of an assertion that, "[i]nitially, the medical records received were incomplete and we had to follow-up on multiple occasions." ECF No. 47-1 at 1. Attached to the Amended Affidavit are various redacted medical records, correspondences, and other documents. *Id*. at 4–15.

Plaintiff's Second Affidavit is neither signed by Plaintiff nor sworn before a Notary Public. ECF No. 47 at 43–46. Plaintiff's Second Affidavit presents various averments and allegations regarding the purported bias and lack of partiality of the Court in this matter. *Id*. It does not, however, address issues related to whether Plaintiff can satisfy the Rule 60(b) requirements.

Plaintiff's Third Affidavit is neither signed by Plaintiff nor sworn before a Notary Public. ECF No. 47 at 47–53. Plaintiff's Third Affidavit presents various averments and allegations regarding "favoritism, bias, prejudice, passion, predetermined outcome, retaliation . . . , and/or other unconstitutional factor[s]" by the Court in issuing rulings in this matter. *Id*. at 50. It does not, however, address issues related to whether Plaintiff can satisfy the Rule 60(b) requirements.

**Rule 60(b) Requirements**

The Court will now assess the Rule 60(b) requirements in light of Plaintiff's arguments and evidence submitted in this case. As an initial matter, Plaintiff has failed to advance any new arguments in support of her Motion to Restore since the Court's prior consideration of the Motion. The crux of Plaintiff's argument is that Defendants' purported failure to provide medical records

in a timely manner constitutes exceptional circumstances to support relief under Rule 60(b).  The Court previously found that assertion, without any evidentiary support, was insufficient to show exceptional circumstances.  In reviewing Plaintiff's new submissions, the Court again finds that Plaintiff's argument is without merit.

### Meritorious Claim

To begin, Plaintiff has failed to establish a meritorious claim as a threshold requirement under Rule 60.  Judge Gergel identified "a number of issues which may impact on whether Plaintiff can demonstrate a meritorious claim in this case."  ECF No. 32 at 5.  Plaintiff has not addressed the nine issues identified by Judge Gergel.  The undersigned will briefly address those issues as well as other issues germane to whether Plaintiff has presented a meritorious claim.

### Standing and Pro se Representation

According to the Complaint, "Plaintiff brings this action pursuant to the South Carolina Survival Action Statutes [and South Carolina Wrongful Death Act] for the Estate of Naomi Hyler Collie (decedent)."[14]   ECF No. 1 at 5.   Although the caption lists Plaintiff "as personal

---

[14] **Error! Main Document Only.**"Under [South Carolina's] Survival Statute, causes of action relating to 'any and all injuries to the person or to the personal property' shall survive to the personal representative of the decedent." *Hurd v. United States*, 134 F. Supp. 2d 745, 775 (D.S.C. 2001) (quoting S.C. Code Ann. § 15-5-90).  "The general rule [is] that any cause of action which could have been brought by the deceased in his lifetime survives to his representative under the Survival Act." *Layne v. Int'l Bd. of Elec. Workers*, 247 S.E.2d 346, 349 (S.C. 1978).

Additionally, South Carolina's wrongful death statute provides as follows:

> Whenever the death of a person shall be caused by the wrongful act, neglect or default of another and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, the person who would have been liable, if death had not ensued, shall

representative," *id.* at 1, Plaintiff has not alleged facts indicating she has been appointed as personal representative of the Decedent's estate. Nor has Plaintiff retained counsel to represent the Decedent's estate in this action. "Courts are in general agreement that where an estate has beneficiaries other than the personal representative, the estate must be represented by counsel." *Washington v. Walls*, C/A No. 9:22-cv-01675-RMG-MHC, 2023 WL 4998601, at *3 (D.S.C. June 2, 2023), *R&R adopted by* 2023 WL 4347049 (D.S.C. July 5, 2023). Plaintiff has not alleged facts showing she is a beneficiary or the sole beneficiary of the Decedent's estate.

Accordingly, Plaintiff lacks standing to assert claims on behalf of the Decedent's estate in this Court. "'[F]ederal courts are courts of limited jurisdiction,' constrained to exercise only the authority conferred by Article III of the Constitution and affirmatively granted by federal statute." *In re Bulldog Trucking, Inc.*, 147 F.3d 347, 352 (4th Cir. 1998). Because federal courts have limited subject matter jurisdiction, there is no presumption that the Court has jurisdiction. *Pinkley, Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999). A federal court is required sua sponte to determine if a valid basis for its jurisdiction exists, "and to dismiss the action if no such ground appears." *Bulldog Trucking*, 147 F.3d at 352; *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). As such, "standing is a threshold jurisdictional issue that must be determined first because

---

> be liable to an action for damages, notwithstanding the death of the person injured.

S.C. Code Ann. § 15-51-10. Unlike with a survival statute claim, the damages recoverable for a claim under the wrongful death statute are not the decedent's damages, but those of the decedent's statutory beneficiaries. *Boyle v. United States*, 948 F. Supp. 2d 577, 580 (D.S.C. 2012). Those recoverable damages include the beneficiaries' "(1) pecuniary loss, (2) mental shock and suffering, (3) wounded feelings, (4) grief and sorrow, (5) loss of companionship, and (6) deprivation of the use and comfort of the intestate's society." *Id.*

24

'[w]ithout jurisdiction the court cannot proceed at all in any cause.'"  *Covenant Media of N.C., L.L.C. v. City of Monroe*, 285 F. App'x 30, 34 (4th Cir. 2008) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)).  "A court does not have subject matter jurisdiction over an individual who does not have standing."  *AtlantiGas Corp. v. Columbia Gas Transmission Corp.*, 210 F. App'x 244, 247 (4th Cir. 2006).

Plaintiff does not have standing to bring claims on behalf of the Decedent's estate.  "The wrongful death statute provides a remedy for the spouse, child, parent, or heir of an injured party when a person commits a wrongful or negligent act causing the injured party's death."  *Dickey v. Clarke Nursing Home*, No. 2007-UP-344, 2007 WL 8327928, at *2 (S.C. Ct. App. June 29, 2007); *see also* S.C. Code Ann. §§ 15–51–10, 15–51–20.  However, a wrongful death "action inheres only in the [personal representative], and the statutory beneficiaries cannot proceed in their individual capacity."  *Dickey*, 2007 WL 8327928, at *2.  Under the statute, "the right of action for wrongful death is purely statutory and . . . may be brought only by the executor or administrator of such deceased person."  *Glenn v. E.I. DuPont De Nemours & Co.*, 174 S.E.2d 155, 157 (S.C. 1970); *see also* S.C. Code Ann. § 15-51-20 ("Every [wrongful death] action shall be brought by or in the name of the executor or administrator of such person.").  Because only the estate's executor or administrator may bring a wrongful death action, a decedent's relative who is not the personal representative of the estate does not have standing to bring such a claim.  *Roberts v. Bodison*, C/A No. 2:14-cv-00750-MGL-MGB, 2015 WL 13215670, at *3–4 (D.S.C. Nov. 20, 2015), *R&R adopted by* 2015 WL 9581756 (D.S.C. Dec. 30, 2015).

Plaintiff has not alleged facts showing that she is the executor or personal representative of the Decedent's estate.  Because only the estate may file an action under the law, Plaintiff does not

have standing to bring the claims. Because Plaintiff lacks standing, the claims are not meritorious in that the Court should dismiss the asserted claims for lack of subject matter jurisdiction.

Additionally, even if Plaintiff were the personal representative of the Decedent's estate, she is not permitted to bring the claims in a *pro se* capacity. *See Mink v. Wal-Mart Stores, Inc.*, C/A No. 5:16-cv-01854, 2016 WL 11483984, at *7 (S.D.W. Va. July 14, 2016), *R&R adopted by* 2016 WL 7106393 (S.D.W. Va. Dec. 5, 2016). A non-attorney individual may not represent an estate. *See, e.g., Pridgen v. Andresen*, 113 F.3d 391, 392–93 (2nd Cir. 1997). "While an individual's right to represent himself or herself *pro se* in federal court is protected by statute; *see* 28 U.S.C. § 1654; the right to litigate one's claims without an attorney 'does not create a coordinate right to litigate for others.'" *Bey v. Colon*, C/A No. 2:19-cv-941-BHH-BM, 2019 WL 3557920, at *3–4 (D.S.C. July 10, 2019) (quoting *Myers v. Loudon Co. Pub. Sch.*, 418 F.3d 395, 400 (4th Cir. 2005)), *R&R adopted by* 2019 WL 3547086 (D.S.C. Aug. 5, 2019). "Courts are in general agreement that where an estate has beneficiaries other than the personal representative (or administrator or executrix) the estate must be represented by counsel." *Id.*; *see also Witherspoon v. Jeffords Agency, Inc.*, 88 F. App'x 659 (4th Cir. 2004). Plaintiff is not permitted to proceed with her claims in this action *pro se*.

### *ACA Claim*

For her Third Cause of Action, Plaintiff purports to assert a claim under the ACA. ECF No. 1 at 6. Plaintiff contends this claim is premised on "discrimination against Decedent based on 42 U.S.C. [§] 6101, *et seq*., in violation of Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116." *Id*. at 7. According to Plaintiff, "Defendants violated applicable

laws by, including but not limited to, discriminating against the Decedent who is a member of the protected group, well over 50 years, on the basis of age." *Id.*

The ACA "outlaws discrimination" "by healthcare entities receiving federal funds" on the grounds prohibited by Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq., (race, color, and national origin discrimination), Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq., (sex-based discrimination), the Rehabilitation Act, 29 U.S.C. § 794, (disability discrimination), or the Age Discrimination Act of 1975, 42 U.S.C. § 6101 et seq., (age discrimination). *See Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 218 (2022) (citing 42 U.S.C. § 18116). It is "beyond dispute that private individuals may sue to enforce" these antidiscrimination statutes. *Id.* at 218 (quoting *Barnes v. Gorman*, 536 U.S. 181, 185 (2002)). "Courts analyze ACA claims under the framework applicable to the statute corresponding to the discrimination alleged." *Rule v. Braiman*, C/A No. 1:23-cv-01218-BKS-CFH, 2024 WL 4042135, at *6 (N.D.N.Y. Sept. 4, 2024).

Plaintiff's ACA claim is based on age discrimination, which is a "ground prohibited under" the Age Discrimination Act ("ADA"). Accordingly, because Plaintiff based her ACA claim on the type of age discrimination prohibited by the ADA, the ADA's "enforcement mechanisms," including its exhaustion requirement, apply to this claim. *See Galuten on behalf of Est. of Galuten v. Williamson Cnty. Hosp. Dist.*, C/A No. 21-5007, 2021 WL 3043275, at *4 (6th Cir. July 20, 2021). The ADA provides that "no person in the United States shall, on the basis of age, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity receiving Federal financial assistance." 42 U.S.C. § 6102.

Under the ADA, "[n]o action . . . shall be brought . . . if administrative remedies have not been exhausted." 42 U.S.C. § 6104(e)(2). To exhaust administrative remedies, a plaintiff must provide notice "to the Secretary of Health and Human Services, the Attorney General of the United States, and the person against whom the action is directed" by registered mail at least 30 days prior to the commencement of the action. *Id.* § 6104(e)(1). A claim is exhausted when (1) 180 days have passed since the plaintiff filed the administrative complaint with a federal department or agency or (2) when the department or agency denies the claim, whichever occurs first. *Id.* § 6104(f). A court may dismiss ADA claims where the plaintiff has not complied with the administrative exhaustion requirements. *Pryor v. Prince George's Cmty. Coll.*, C/A No. JFM-12-cv-2653, 2013 WL 12112483, at *1 (D. Md. May 15, 2013) (explaining the ADA "unquestionably requires exhaustion of administrative remedies before the filing of suit"), *aff'd*, 539 F. App'x 291 (4th Cir. 2013).

Plaintiff's Complaint is devoid of any allegations that she exhausted her administrative remedies. Accordingly, the ACA claim should be dismissed for failure to exhaust as "there is no evidence before this Court which indicates that Plaintiff notified the parties listed in § 6104(e) or even exhausted his administrative remedies under the ADA before filing the present lawsuit."[15] *Heckman v. Univ. of N.C. at Chapel Hill*, 19 F. Supp. 2d 468, 473 (M.D.N.C. 1998) (dismissing ADA claim for failure to comply with the prerequisites for filing such a claim); *see also Brownscombe v. Dep't of Campus Parking*, 203 F. Supp. 2d 479, 483 (D. Md. 2002) (dismissing

---

[15] Courts have noted that a plaintiff's failure to provide notice or exhaust administrative remedies as required by the ADA deprives the Court of subject matter jurisdiction. *See Enisco v. Presbyterian Healthcare Services*, C/A No. 21-cv-323-JCH-JFR, 2021 WL 3206977, at *7 (D.N.M. July 29, 2021), *R&R adopted by* 2021 WL 3772178 (D.N.M. Aug. 25, 2021).

ADA claim for failing to exhaust administrative remedies); *Young v. W. Virginia Univ.*, C/A No. 1:21-cv-35, 2022 WL 816041, at *3 (N.D.W. Va. Mar. 17, 2022).

"Further, Plaintiff's Complaint seeks only monetary damages, which are not available under the [ADA]." *Nurse v. A Better Choice Case Mgmt., LLC*, C/A No. 9:21-cv-455-MBS-MHC, 2021 WL 3410791, at *5 (D.S.C. June 4, 2021), *R&R adopted by* 2021 WL 3088047 (D.S.C. July 22, 2021). One district court has explained as follows:

> The ADA provides a limited private right of enforcement that is confined to injunctive relief against the entity that receives federal funds. *See Tyrrell v. City of Scranton*, 134 F. Supp. 2d 373, 381–84 (M.D. Pa. 2001). Specifically, § 6104(e)(1) provides individuals may bring suit "to enjoin a violation of this Act by any program or activity receiving Federal financial assistance" and further provides that plaintiffs who prevail may receive "the costs of suit, including a reasonable attorney's fee[.]" 42 U.S.C. § 6104(e)(1). Other district courts have reasoned that Congress purposely excluded a private right of action to seek monetary damages under the ADA. *See e.g. Tyrrell*, 134 F. Supp. 2d at 383 ("In the context of this detailed remedial scheme, in which Congress has expressly provided for administrative remedies as well as a private right to seek injunctive relief, Congress' failure to mention a private right to seek damages weighs heavily against the judicial implication of such a remedy.").

*Young v. W. Va. Univ.*, C/A No. 1:23-cv-29, 2023 WL 5674132, at *9 (N.D.W. Va. Aug. 8, 2023), *R&R adopted by* 2023 WL 5673959 (N.D.W. Va. Sept. 1, 2023), *aff'd*, No. 23-2018, 2024 WL 863660 (4th Cir. Feb. 29, 2024). Because the ADA does not support a claim for damages, Plaintiff's ACA claim fails to state a claim for relief as she seeks only money damages.

Plaintiff's ACA claim as to any individual Defendant, including Mabes, also fails as a matter of law because there is no individual liability under the ADA. *See Milford v. Middleton*, C/A No. 2:16-cv-2441-RMG-MGB, 2017 WL 9250335, at *6 (D.S.C. Nov. 30, 2017) (dismissing ADA claims against individual defendant as such claims fail as a matter of law), *R&R adopted by*

2018 WL 348059 (D.S.C. Jan. 10, 2018); *Marley v. Univ. of S.C.*, C/A No. 3:08-cv-937-CMC, 2010 WL 3852244, at *11 n.12 (D.S.C. Aug. 20, 2010) ("District courts in the Fourth Circuit have found that individuals are not liable for violations of the ADA."), *R&R adopted by* 2010 WL 3852175 (D.S.C. Sept. 27, 2010).

### *Subject Matter Jurisdiction Over State Law Claims*

The only federal question claim asserted by Plaintiff is her ACA claim based on alleged age discrimination under the ADA. Plaintiff's ACA claim is subject to dismissal for the reasons stated above. In the absence of federal question jurisdiction, the district court may decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. *See* 28 U.S.C. § 1367(c)(3) (A district court "may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction."). Further, the Court would only have original jurisdiction to consider Plaintiff's state law claims—in the absence of federal question—if it has diversity jurisdiction. However, the Court lacks diversity jurisdiction.

The diversity statute imposes two requirements—complete diversity between the parties and an amount in controversy in excess of $75,000.00. *See* 28 U.S.C. § 1332(a); *Anderson v. Caldwell*, C/A No. 3:10-cv-1906-CMC-JRM, 2010 WL 3724752, at *4 (D.S.C. Aug. 18, 2010), *R&R adopted by* 2010 WL 3724671 (D.S.C. Sept. 15, 2010). Complete diversity of the parties means that no party on one side may be a citizen of the same state as any party on the other side. *See Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 372–74 (1978).

The Complaint alleges that Plaintiff "is a citizen and resident of the County of Charleston, State of South Carolina." ECF No. 1 at 2. The Complaint also alleges that "Greenwood Regional Rehabilitation Hospital is a limited liability company and healthcare provider operating in

Greenwood, SC." *Id*. This puts South Carolina residents both as plaintiff and defendant. Complete diversity therefore does not exist. Accordingly, the Court lacks subject matter jurisdiction over Plaintiff's state law claims.

### *Personal Jurisdiction over the Georgia/Delaware Defendants*

Plaintiff has named MCG, which is "a governmental entity and healthcare provider in Richmond County, Georgia;" "Select Specialty Hospital – Augusta, Inc.," which is a "Delaware, for profit corporation" and a "subsidiary of Select Medical Holdings Corp., which is a publicly held entity and healthcare provider formed in Delaware;" and Mabes, who is "a full-time healthcare provider employee of [Augusta University]" (collectively the "Georgia/Delaware Defendants"). ECF No. 1 at 2. Even if the Court had subject matter jurisdiction over Plaintiff's state law claims, the Complaint lacks sufficient allegations to demonstrate that the Court has personal jurisdiction over the Georgia/Delaware Defendants.

According to Plaintiff, the Decedent fell ill in her home on November 7, 2021, and was transported by ambulance to MCG, located in Georgia. *Id*. at 3. The Decedent underwent emergency laproscopic surgery. *Id*. The Decedent died on December 26, 2021. *Id*.

A federal court may exercise personal jurisdiction over a defendant in the manner provided by state law. Fed. R. Civ. P. 4(k)(1)(A); *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997). "For a district court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied." *Bradley v. General Couns.*, C/A No. 3:07-cv-112, 2008 WL 713921, at *5 (N.D. W. Va. Mar. 14, 2008), *aff'd*, 280 F. App'x 251 (4th Cir. 2008). "First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and, second, the exercise of personal jurisdiction must also comport with Fourteenth Amendment due process

31

requirements." *Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001).

"South Carolina's long-arm statute has been interpreted to reach the outer bounds permitted by the Due Process Clause."[16] *ESAB Grp.*, 126 F.3d at 623. Therefore, the appropriate question for a court considering a personal jurisdiction defect for an out-of-state defendant is whether that defendant has "minimum contacts with [South Carolina] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (stating that the exercise of jurisdiction over a nonresident defendant comports with due process if the defendant has "minimum contacts" with the forum state, such that requiring the defendant to defend its interests in that state "does not offend traditional notions of fair play and substantial justice.")); *see Callum v. CVS Health Corp.*, 137 F.

---

[16] South Carolina's long arm statute provides as follows:

> A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's: (1) transacting any business in this State; (2) contracting to supply services or things in the State; (3) commission of a tortious act in whole or in part in this State; (4) causing tortious injury or death in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State; (5) having an interest in, using, or possessing real property in this State; (6) contracting to insure any person, property, or risk located within this State at the time of contracting; (7) entry into a contract to be performed in whole or in part by either party in this State; or (8) production, manufacture, or distribution of goods with the reasonable expectation that those goods are to be used or consumed in this State and are so used or consumed.

S.C. Code Ann. § 36-2-803(A) (2005).

Supp. 3d 817, 834 (D.S.C. 2015) ("Because the South Carolina long-arm statute is coextensive with the Due Process Clause, the sole question on a motion to dismiss for lack of personal jurisdiction is whether the exercise of personal jurisdiction would violate due process.") (citing *Tuttle Dozer Works, Inc. v. Gyro–Trac (USA), Inc.*, 463 F. Supp. 2d 544, 547 (D.S.C. 2006) and *Cockrell v. Hillerich & Bradsby Co.*, 363 S.C. 485, 611 S.E.2d 505, 508 (2005)).

Personal jurisdiction may arise generally or specifically based on the conduct alleged in the suit. *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 n. 15 (4th Cir. 2009); *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711 (4th Cir. 2002). Under general jurisdiction, a defendant's contacts or activities in the forum state are not the basis for the suit, but the defendant may be sued in this Court "for any reason, regardless of where the relevant conduct occurred," because the defendant's activities in South Carolina are "continuous and systematic." *CFA Inst.*, 551 F.3d at 292 n.15. These activities must be "so substantial and of such a nature as to justify suit against [a defendant] on causes of action arising from dealings entirely distinct from those activities." *Int'l Shoe Co.*, 326 U.S. at 318. Here, Plaintiff does not allege general jurisdiction over the Georgia/Delaware Defendants pursuant to S.C. Code Ann. § 36-2-802, nor does the Complaint allege facts to demonstrate that the Court has general jurisdiction over these Defendants.

Under specific jurisdiction, a defendant may be sued in this Court if the litigation results from alleged injuries that arose out of or is related to the defendant's contacts with South Carolina, and those contacts were sufficient. *See, e.g., Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). To determine whether specific jurisdiction exists, courts employ a "minimum contacts" analysis that examines "(1) the extent to which the defendant 'purposefully

avail[ed]' itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *ALS Scan, Inc.*, 293 F.3d at 712. Here, Plaintiff does not allege specific jurisdiction over the Georgia/Delaware Defendants pursuant to Rule 4(k)(1) and S.C. Code Ann. § 36-2-803(1), nor does the Complaint allege facts to demonstrate that the Court has specific jurisdiction over these Defendants.

The Complaint presents only cursory allegations against the Georgia/Delaware Defendants. However, those allegations show that the conduct of these Defendants that gives rise to Plaintiff's claims occurred in Georgia, not South Carolina. The Complaint contains no allegations showing that the Georgia/Delaware Defendants purposefully availed themselves of the privilege of conducting certain activities in South Carolina. Plaintiff's claims all arise out of the Georgia/Delaware Defendants' treatment of the Decedent in a hospital located in Georgia. Accordingly, the Court lacks personal jurisdiction over the Georgia/Delaware Defendants. *See, e.g., Wolf v. Richmond Cnty. Hosp. Auth.*, 745 F.2d 904, 912 (4th Cir. 1984) (finding a Georgia hospital lacked sufficient contacts with the State of South Carolina to be subject to the jurisdiction of its courts); *Clark v. Remark*, 993 F.2d 228 (4th Cir. 1993) (explaining that single communication between doctor in Florida and patient in Virginia, which was solicited by the patient, was not sufficient to confer personal jurisdiction); *Ruhe v. Bowen*, C/A No. 2:15-cv-03792-DCN, 2016 WL 5372555, at *5 (D.S.C. Sept. 26, 2016) (finding a Colorado doctor and medical practice did "not possess minimum contacts with South Carolina for the purpose of personal jurisdiction").

### *Failure to Comply with Pre-Suit Requirements*

Even if the Court were to conclude that it had both subject matter jurisdiction and personal jurisdiction over the Georgia/Delaware Defendants, Plaintiff's claims are subject to dismissal for failing to comply with certain pre-suit requirements under both South Carolina and Georgia law.[17] Although Plaintiff does not expressly assert a claim for medical malpractice, her claims for wrongful death and survivorship are premised on a theory of medical malpractice. *Williams v. Quest Diagnostics, Inc.*, 353 F. Supp. 3d 432, 441 (D.S.C. 2018) ("The court finds that Plaintiff's claims for wrongful death, survivorship, negligent misrepresentation, and constructive fraud are comprised of allegations sounding in both medical malpractice and ordinary negligence.").

Since the alleged conduct appears to have occurred in Georgia, Georgia law may apply. Plaintiff has failed to comply with provisions of Georgia law regarding the filing of a medical malpractice claim. "Georgia law also requires medical-malpractice plaintiffs to submit an affidavit from a competent expert, 'set[ting] forth specifically at least one negligent act or omission claimed to exist and the factual basis for each such claim.'" *Knapik v. United States*, C/A No. 5:19-cv-00185-TES, 2020 WL 7775429, at *12 (M.D. Ga. Dec. 30, 2020) (quoting O.C.G.A. § 9-11-9.1(a)); *see also Mansfield v. United States*, C/A No. 4:19-cv-168, 2020 WL 1130860, at *3 (S.D. Ga. Mar. 6, 2020) ("[I]n any action for damages alleging professional malpractice[ ] . . . the

---

[17] Plaintiff alleges that "Greenwood Regional Rehabilitation Hospital is a limited liability company and healthcare provider operating in Greenwood, SC." ECF No. 1 at 2. As noted, Plaintiff purports to bring claims under the "South Carolina Survival Action Statutes" and "South Carolina Wrongful Death Act." ECF No. 1 at 5–6. Plaintiff does not identify any specific statutory provision as to these statutes. Plaintiff also makes no reference to any Georgia statutes that might provide a basis for her claims. Plaintiff has not explained whether her statutory claims under South Carolina law apply to the Georgia/Delaware Defendants. As Plaintiff has named Defendants from South Carolina and Georgia, the Court considers applicable laws in both states without making a determination as to which law would apply.

plaintiff shall be required to file with the complaint an affidavit of an affidavit of an expert competent to testify, which affidavit shall set forth specifically at least one negligent act or omission claimed to exist and the factual basis for each such claim."). Thus, to the extent Plaintiff's claims are construed as asserting medical malpractice claims under Georgia law, any such claims are subject to dismissal for failing to comply with the statutory pre-suit requirements. *Dixon v. Jones*, C/A No. 4:23-cv-00024-CDL-MSH, 2023 WL 11995365, at \*3 (M.D. Ga. May 30, 2023) ("To the extent the Plaintiff attempts to raise state law medical negligence or malpractice claims related to his medical treatment, he has not attached any expert affidavit, nor has he alleged that he has complied with Georgia's ante-litem notice requirements for tort claims against a state government entity and its officers or employees."), *R&R adopted by* 2023 WL 11997055 (M.D. Ga. July 14, 2023).

In the same vein, Plaintiff has also failed to demonstrate that she has complied "with Georgia's *ante-litem* notice requirements for tort claims against a state government entity and its officers and employees," as to her claims against Augusta University. *Jamison v. Long*, C/A No. 5:19-cv-00457-TES-MSH, 2021 WL 3702488, at \*8 (M.D. Ga. May 27, 2021), *R&R adopted by* 2021 WL 2936132 (M.D. Ga. July 13, 2021). "The [Georgia Tort Claims Act] requires that plaintiffs give an *ante litem* notice of tort suits against Georgia to the State's Risk Management Division of the Department of Administrative Services" and "further requires plaintiffs to attach as exhibits to their complaint a copy of the *ante litem* notice and a receipt for its delivery." *Regalado v. Ga. State Univ.*, C/A No. 1:20-cv-720-LMM, 2020 WL 5815924, at \*7 (N.D. Ga. Sept. 10, 2020) (citing O.C.G.A. § 50-21-25(a)). Failure to attach such a notice to a complaint is a bar to suit. *Id*. As such, because Plaintiff has failed to attach any *ante litem* notice, nor allege facts

showing she has complied with the statutory requirement, her claims against Augusta University, an arm of the State of Georgia, are barred.

To the extent Plaintiff's claims are construed as claims for medical malpractice under South Carolina law, such claims are subject to dismissal because Plaintiff has not complied with the mandatory South Carolina pleading requirements as found in S.C. Code § 15-36-100 in that she has failed to file an affidavit of a competent expert witness or notice of intent to file suit.[18]  *See*

---

[18] It has been the practice within this District to require compliance with "South Carolina's substantive law regarding the filing of medical malpractice claims . . . ."  *Alexander v. Rite Aid Corp.*, C/A No. 4:11-cv-01406-RBH, 2012 WL 80458, at *2 (D.S.C. Jan. 11, 2012).  In *Millmine v. Harris*, C/A No. 3:10-cv-1595-CMC, 2011 WL 317643, at *2 (D.S.C. Jan. 31, 2011), the Honorable Cameron McGowan Currie concluded "[t]he South Carolina Code sections relating to professional negligence claims **are the substantive law of South Carolina**" (emphasis added) after evaluating whether S.C. Code §§ 15-79-125 and 15-36-100 are state substantive law applicable in federal court proceedings under the principles of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938).  Courts within this District consistently have found that, "[u]nder South Carolina law, litigants alleging medical malpractice are required to comply with various statutory requirements" as they are state substantive law.  *See, e.g.*, *Hooks-Rivera v. Bulow Biotech Prosthetics, LLC*, C/A No. 3:23-cv-2092-SAL, 2023 WL 11963042, at *2 (D.S.C. Dec. 1, 2023); *see also Parkins by & through Turner v. South Carolina*, C/A No. 7:21-cv-2641-HMH, 2022 WL 524895, at *17 (D.S.C. Feb. 22, 2022) ("[T]he court finds that compliance with the pre-suit requirements is necessary in a medical negligence action against a government entity."), *amended on reconsideration in part*, 2022 WL 19333417 (D.S.C. Apr. 5, 2022); *Lyles v. McRee*, C/A No. 4:22-cv-1398-SAL-TER, 2023 WL 6638970, at *5, n.3 (D.S.C. Apr. 28, 2023) ("To the extent Plaintiff asserts a state law claim of medical malpractice, it is subject to dismissal for failure to follow South Carolina medical malpractice statutory pleading requirements by attaching an affidavit of an expert witness prior to filing or initiating a civil action."), *R&R adopted by* 2023 WL 6307402 (D.S.C. Sept. 28, 2023), *aff'd*, 2024 WL 3465982 (4th Cir. July 17, 2024); *Brown v. Prisma Health Hosp. Richland*, C/A No. 3:23-cv-02967-JFA, 2023 WL 6866544, at *2 (D.S.C. Oct. 18, 2023) (dismissing case, in part, "based on Plaintiff's failure to comply with the South Carolina pleading requirements for medical malpractice actions"), *aff'd*, No. 23-2125, 2023 WL 8826961 (4th Cir. Dec. 21, 2023); *Battle v. S.C. Dep't of Corr.*, C/A No. 2:23-cv-06182-CMC-MGB, 2024 WL 3326413, at *5 (D.S.C. May 24, 2024) (finding the plaintiff was "required to comply with certain pre-suit requirements of the South Carolina Medical Malpractice Reform Act of 2005"), *R&R adopted by* 2024 WL 3219182 (D.S.C. June 28, 2024).  *But see Britt v. Cnty. of Charleston*, C/A No. 2:21-cv-3770-RMG, 2022 WL 820017, at *2 (D.S.C. Mar. 18, 2022) (noting the Fourth Circuit may find a medical malpractice claim brought in federal court is not subject to

*Bane v. United States*, C/A No. 2:17-cv-3371-CMC-MGB, 2018 WL 5306930 (D.S.C. Oct. 26, 2018) (dismissing case, in part, because of the plaintiff's failure to file expert affidavit); *Harrison v. United States*, C/A No. 8:17-cv-02679-HMH-JDA, 2018 WL 2604870, at *6 (D.S.C. May 11, 2018), *R&R adopted by* 2018 WL 2573032 (D.S.C. June 4, 2018) (dismissing medical malpractice claim for failure to file expert affidavit).

"In the Tort Reform Act of 2005 Relating to Medical Malpractice, the South Carolina General Assembly enacted several statutes that placed procedural and substantive limitations on plaintiffs in medical malpractice actions." *Mclean v. United States*, C/A No. 9:17-cv-2702-DCC, 2018 WL 4020220, at *6 (D.S.C. Aug. 23, 2018). Among these changes, the General Assembly enacted S.C. Code Ann. § 15-36-100, which requires plaintiffs in medical malpractice cases to "file as part of the complaint an affidavit of an expert witness which must specify at least one negligent act or omission claimed to exist and the factual basis for each claim based on the available evidence at the time of the filing of the affidavit." S.C. Code Ann. § 15-36-100(B).

Plaintiff's claims against Defendants sound in alleged medical malpractice. *See, e.g.*, *Thomas v. United States*, C/A No. 2:18-cv-00671-RMG, 2019 WL 643484, at *2 (D.S.C. Feb. 15, 2019) ("[C]ourts in this district have construed alleged negligence claims as ones for medical malpractice where Plaintiffs allege misdiagnosis, improper treatment, or failure to diagnose."). The South Carolina Legislature enacted the Frivolous Civil Proceedings Sanctions Act "in an effort to prevent the filing of frivolous lawsuits and initiate the investigation and settlement of cases prior to the filing of complaints." *Oakman v. Lincare*, C/A No. 1:13-cv-00428-JMC, 2013 WL 3549848,

---

South Carolina's notice-and-affidavit requirement under *Pledger v. Lynch*, 5 F.4th 511, 518 (4th Cir. 2021)).

at *3 (D.S.C. July 10, 2013).  It "requires the contemporaneous filing of an expert affidavit with the complaint in certain lawsuits alleging professional negligence."  *Id.*; *see also* S.C. Code Ann. § 15-36-100.  The pertinent section provides as follows:

> Except as provided in Section 15-79-125, in an action for damages alleging professional negligence against a professional licensed by or registered with the State of South Carolina and listed in subsection (G) or against any licensed health care facility alleged to be liable based upon the action or inaction of a health care professional licensed by the State of South Carolina and listed in subsection (G), the plaintiff must file as part of the complaint an affidavit of an expert witness which must specify at least one negligent act or omission claimed to exist and the factual basis for each claim based on the available evidence at the time of the filing of the affidavit.

S.C. Code Ann. § 15-36-100(B).  Subsection (G) includes medical personnel.  "Multiple judges within this district . . . have held . . .Section 15-36-100 [is] part of the substantive law of South Carolina and, consequently, appl[ies] to actions filed in federal court."  *Grant v. United States*, C/A No. 3:17-cv-0377-CMC, 2017 WL 2265956 at *9 (D.S.C. May 24, 2017).

Plaintiff did not file an affidavit contemporaneously with the filing of her Complaint.  As such, her claims for medical malpractice against Defendants should be dismissed.[19]  *See Brown v. Prisma Health Hosp. Richland*, C/A No. 3:23-cv-2967-JFA-SVH, 2023 WL 7199694, at *4 (D.S.C. Aug. 29, 2023) (dismissing medical malpractice claims against Prisma where the plaintiff failed to file an expert affidavit), *R&R adopted by* 2023 WL 6866544 (D.S.C. Oct. 18, 2023), *aff'd*,

---

[19] Plaintiff has filed a document purporting to be a Notice of Intent to File Suit in accordance with S.C. Code § 15-79-125.  ECF No. 7-3.  However, that document was filed with this Court *after* Plaintiff commenced the action and *after* Plaintiff filed her Notice of Voluntary Dismissal.  That document also does not appear to satisfy the requirements of the state statute in that it was filed as a document in this case rather than being served on any Defendant.  In any case, Plaintiff did not file an expert affidavit contemporaneously with the Complaint.

No. 23-2125, 2023 WL 8826961 (4th Cir. Dec. 21, 2023); *Gamez-Gonzalez v. United States*, C/A No. 4:14-cv-2668-JMC-TER, 2017 WL 3084488, at *3 (D.S.C. May 17, 2017), *R&R adopted by* 2017 WL 3067974 (D.S.C. July 19, 2017) (dismissing the plaintiff's malpractice claim pursuant because "it has no supporting expert affidavit"); *Millmine v. Harris*, C/A No. 3:10-cv-1595-CMC, 2011 WL 317643, at *2 (D.S.C. Jan. 31, 2011) (holding that pre-suit notice and expert affidavit requirements in S.C. Code Ann. § 15-36-100 and § 15-79-125 are "the substantive law of South Carolina").

### *Eleventh Amendment Immunity*

Courts have noted that MCG is a stage agency entitled to Eleventh Amendment Immunity. *See Meriwether v. Battle*, C/A No. 5:19-cv00285-MTT-CHW, 2019 WL 13497673, at *3 (M.D. Ga. Nov. 1, 2019), *R&R adopted by* 2019 WL 13497732 (M.D. Ga. Nov. 27, 2019); *Nicholl v. Bd. of Regents of Univ. Sys. of Georgia*, 706 F. App'x 493, 495 (11th Cir. 2017) (explaining that the Board of Regents of the University System of Georgia is a state agency entitled to sovereign immunity); *Laun v. Bd. of Regents of Univ. Sys. of Georgia*, C/A No. 1:18-cv-033, 2019 WL 4694940, at *1 n.1 (S.D. Ga. Sept. 25, 2019) (explaining that Augusta University is a unit of the Board of Regents of the University System of Georgia). Because MCG is entitled to Eleventh Amendment immunity, Plaintiff's claims against it are barred in this Court.

For these reasons, the Court finds that Plaintiff has failed to identify a meritorious claim to satisfy the threshold requirements of Rule 60(b) because her claims would be subject to dismissal if the case were reopened.

### *Exceptional Circumstances*

The Court also finds that Plaintiff has failed to demonstrate that exceptional circumstances exist to warrant reopening this case. Plaintiff advances a single argument in support of her Motion—she contends that Defendants delayed in turning over the Decedent's medical records. *See* ECF Nos. 12 at 1; 47 at 30 ("[E]xceptional circumstances include defendants' unreasonable delay in providing timely requested medical records for the required medical expert affidavit."). Plaintiff has submitted several documents in support. ECF No. 47-1. However, those documents, which include correspondences, records request forms, and birth, death, and marriage certificates for the Decedent, are heavily redacted and provide no explanation as to why the purported delay in obtaining medical records is a proper basis for restoring this action. Despite multiple opportunities to provide argument and evidence to support her Motion, Plaintiff has failed to articulate a plausible basis to show exceptional circumstances in this case such that the Court should reopen the matter.

### *Six Enumerated Factors*

Because Plaintiff has failed to make a showing of the threshold requirements of Rule 60(b), her Motion to Restore should be denied. Even if Plaintiff could successfully meet all four threshold requirements, her Motion to Restore would still fail because she has not satisfied any one of the six enumerated factors identified in Rule 60(b). *Coomer v. Coomer*, 217 F.3d 838 (4th Cir. 2000) ("In the unlikely event the moving party can clear this onerous four-part threshold, he must then satisfy one of the six enumerated factors set forth in Rule 60(b)."). Plaintiff has not addressed any of the six criteria, and the Court finds that none of the six criteria are met.

41

As to the first factor, there is no evidence in the record before the Court of any mistake, inadvertence, surprise, or excusable neglect.  Plaintiff premises her Motion to Restore solely on the assertion that she was delayed in gathering medical records for the Decedent.  But Plaintiff has not provided an explanation as to why she was unable to gather any necessary medical documents for the Decedent after her death in December 2021 until the filing of Plaintiff's Motion to Restore in February 2025 other than to assert, without evidentiary support, that Defendants caused the delay.  The record is devoid of any evidence of any mistake, inadvertence, surprise, or excusable neglect.  Similarly, as to the second factor, Plaintiff has not identified any newly discovered evidence that, with reasonable diligence, could not have been previously discovered.  As to the third factor, there is no indication of any fraud, misrepresentation, or misconduct by an opposing party.  Although Plaintiff argues Defendants caused delay in getting medical records, she provides no evidence or explanation as to any specific conduct by any Defendant in causing the delay.  The fourth and fifth factors—that the judgment is void or the judgment has been satisfied, released, or discharged—are inapplicable.  As to the sixth factor, Plaintiff has not identified any other reason that justifies relief, and the Court cannot discern any.

## CONCLUSION AND RECOMMENDATION

Based upon the foregoing, it is **RECOMMENDED** that the district court **DENY** Plaintiff's Motion to Restore (ECF No. 12).  It is further **RECOMMENDED** that the portion of the Rule 59(e) Motion (ECF No. 46) directed at reconsideration of the undersigned's text order (ECF No.

38) be **DENIED**.  If this recommendation is accepted, it is further recommended that Plaintiff's

other Motions all be **DENIED AS MOOT** because the case would remain closed.[20]

      **IT IS SO RECOMMENDED**.

s/William S. Brown        
United States Magistrate Judge

September 12, 2025
Greenville, South Carolina

*Plaintiff's attention is directed to the important notice on the next page.*

---

[20] If the case is reopened, further review of the pleadings will be necessary under established local procedure in this District to determine whether service of process should be authorized.

## Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
250 East North Street, Suite 2300
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).